UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RM TRANSNATIONAL LTD., | CIVIL ACTION NO. |
| Plaintiff, | **DOCUMENT FILED ELECTRONICALLY** |
| v. | |
| CRAGIN & PIKE, INC. and PRIME PROPERTY INSURANCE, INC., | **NOTICE OF REMOVAL** |
| Defendants. | |

**PLEASE TAKE NOTICE** that, on this date, defendant, Cragin & Pike, Inc. ("Cragin"), by its undersigned counsel, has filed this Notice of Removal pursuant to 28 U.S.C. § 1446(a), in the office of the Clerk of the United States District Court for the District of New Jersey.

Defendant, by its undersigned attorneys, shows:

## BACKGROUND

1. Plaintiff, RM Transnational Ltd. ("Plaintiff"), brought an action against defendant in the Superior Court of New Jersey, Law Division, Bergen County, and the Court filed the complaint and jury demand on July 31, 2025 under Docket No. BERG-L-005151-25. A true copy of Plaintiff's complaint is attached as **Exhibit "A."**

2. According to the complaint, Plaintiff asserts claims against Cragin for professional negligence and breach of fiduciary duty in connection with the procurement of an insurance policy with co-defendant, Prime Property & Casualty Insurance, Inc. ("Prime"). Plaintiff asserts claims against Prime for breach of contract and breach of the duty to defend with regard to the Prime insurance policy.

#123665799v1

3. The loss for which Plaintiff asserts damages against the defendants involves a very serious accident whereby Plaintiff's bus with 22 passengers on board rolled over, resulting in injuries to the driver and numerous passengers, including a fatality. Complaint at ¶¶ 23-24.

4. Plaintiff asserts that "Prime has accepted defense coverage under the relevant financial responsibility laws but has denied coverage for the full liability limit under the Policy, which is $5 million excess of a $5000 self-insured retention." Id. at ¶ 29.

5. Further, Prime confirmed that there was property damage to Plaintiff's bus in the amount of $278,060.18 with an actual cash value of $273,231.93. However, Prime has not provided any payments to Plaintiff in connection with the property damage claim. Id. at ¶¶ 30-31.

**GROUNDS FOR REMOVAL-DIVERSITY JURISDICTION**

6. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a), and this action is removable under U.S.C. § 1441(a), 1441(b)(2), and § 1446(b) because there is complete diversity between the parties and because the amount-in-controversy, exclusive of interest and costs, exceeds $75,000.

*Diversity of Citizenship*

7. A corporation is deemed a citizen of its state of incorporation and that state where it has its principal place of business. See 28 U.S.C. § 1332(c).

8. Defendant Cragin and Pike, Inc. is a Nevada corporation with a principal place of business located at 1000 W. Charleston Blvd., Suite 200, Las Vegas, Nevada.

9. Upon information and belief, Plaintiff RM Transnational Ltd. is a Delaware corporation with an office location at 1 Meadowlands Plaza, Suite 200, East Rutherford, New Jersey.

10. Upon information and belief, the Co-Defendant Prime Property & Casualty Insurance, Inc. is an Illinois corporation and has its principal place of business in Utah.

11. Based on the foregoing, there is complete diversity between Plaintiff and Defendants as required under 28 U.S.C. 1332(a), and ri28 U.S.C. § 1441 and § 1446.

12. Jurisdiction over the subject matter of this action is conferred on this Court by 28 U.S.C. §§ 1441(a), 1441(b)(2), 1332.

*Amount in Controversy*

13. As stated above, in the State Court Action Plaintiff seeks to recover property damage in excess of $270,000 and coverage for a very serious accident involving multiple personal injuries, including a fatality.

14. Based on the allegations of the Complaint, the amount-in-controversy exceeds $75,000 exclusive of interest and costs.

**The Procedural Requirements for Removal Have Been Satisfied**

15. This action is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) due to the parties' complete diversity of citizenship and satisfaction of the requisite amount-in-controversy.  Therefore, this action is properly removable pursuant to 28 U.S.C. § 1441(a).

16. The United States District Court of New Jersey is the proper venue for removal of this action because it is the District in which the State Court Action is pending.  See 28 U.S.C. § 1446(a).

17. As described herein, Cragin has complied with the procedural requirements for removal.

18. Cragin was served with the complaint on or about August 7, 2025.

19. This notice is filed within the time required by 28 U.S.C. § 1446(b).

20. There have been no other proceedings in this action.

21. Removal is therefore timely under 28 U.S.C. §1441(b)(2) and 1446(b).

22. Pursuant to 28 U.S.C. § 1446(d), Cragin certifies that it will promptly serve written notice of this Notice of Removal on counsel for the parties and file the same with the Clerk of the Bergen County Superior Court of New Jersey, Law Division.

23. By filing this Notice of Removal, Cragin does not waive any defense that may be available to it, including, but not limited to, the right to contest jurisdiction, service of process, or venue in this Court or state court.

24. Nothing herein should be deemed an admission by Cragin of any allegations in Plaintiff's Complaint.

**WHEREFORE,** Defendant, Cragin & Pike, Inc., respectfully requests that the above-captioned action, pending in the Bergen County Superior Court of New Jersey, Law Division, be removed to the United States District Court of New Jersey.

**PLEASE TAKE FURTHER NOTICE** that defendant, upon filing the Notice of Removal in the Office of the Clerk of the United States District Court for the District of New Jersey, has served a copy of this Notice of Removal on Plaintiff, and has also filed a copy of the Notice with the Clerk of the Superior Court of New Jersey, via eCourts, to effect removal of this action to the United States District Court pursuant to 28 U.S.C. § 1441(b)(2) and § 1446(b)(1) .

Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Attorneys for Defendant, Cragin & Pike, Inc.

By: /s/ Jason S. Feinstein
    Marshall D. Bilder, Esq. (ID# 030521989)
    Jason S. Feinstein, Esq. (ID# 038941994)
    Physical Address: 2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648
    Mailing Address: P.O. Box 5404, Princeton, NJ 08543
    Telephone: (609) 392-2100
    Facsimile: (609) 392-7956

Dated:  August 15, 2025

#123665799v1

# EXHIBIT A

Eugene Killian, Jr. (Bar No. 00208 1990)
Dimitri Teresh (Bar No. 90325 2012)
**THE KILLIAN FIRM, P.C.**
Tindall Executive Office Suites
107 Tindall Road
Middletown, NJ 07748
732-912-2100
ekillian@tkfpc.com
dteresh@tkfpc.com
*Attorneys for Plaintiff*

| | |
|---|---|
| RM TRANSNATIONAL LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> CRAGIN & PIKE, INC. and PRIME PROPERTY & CASUALTY INSURANCE, INC., <br><br> *Defendants.* | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY <br><br> Docket No. <br><br> *Civil Action* <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, RM Transnational Ltd., having its place of business at 1 Meadowlands Plaza, Suite 200, East Rutherford, NJ 07073 ("RMT"), for its complaint against defendants Cragin & Pike, Inc. ("C&P") and Prime Property & Casualty Insurance, Inc. ("Prime") and, alleges as follows:

**Nature and Background of this Action**

1. This is a suit for professional negligence and breach of contract as the result of the failure of an insurance broker and risk management consultant, C&P, to advise RMT of an alleged serious gap in coverage for injuries arising from bus operations; to discuss and explain the significance of that coverage gap; and to recommend potential risk mitigation

1

alternatives. As a result of these issues, Prime has provided RMT with only limited coverage with respect to a fatal accident that occurred on January 5, 2024, and has failed to compensate RMT for substantial damage to the bus involved in the accident. Alternatively, if C&P's interpretation of the coverage that it procured for RMT is correct, then RMT seeks to enforce defense and indemnity coverage under the policy sold by Prime.

### The Parties

2. RMT is a transportation service provider, and provides such transportation for scheduled and chartered bus routes in Canada and the United States.

3. C&P is an experienced insurance brokerage and risk management consulting firm that, during the time periods relevant to this case, was engaged to provide RMT with risk management advice and consultation, and to procure appropriate Commercial Auto insurance on behalf of RMT.

4. As of the date of this Complaint, C&P asserts that its team "take[s] the time necessary to make sure [their] solution is comprehensive and right for [its customers]" and that it "objectively evaluate[s] tailored solutions that fit [their] needs."[1]

5. Prime is a surplus lines insurance company that markets and sells insurance products throughout the United States, including in New Jersey, for substantial premiums. Among the insurance products sold by Prime is commercial auto coverage.

6. As of the date of this Complaint, Prime asserts that its Commercial Auto insurance for buses provides "[p]rotection if an incident, claim or lawsuit occurs," a "[p]artnership

---

[1] See Cragin & Pike – Why Us at https://www.cragin-pike.com/our-firm/why-cragin-and-pike/ (last accessed July 31, 2025).

2

approach by collaborating and working together," "[f]lexible underwriting and customized coverage," "[o]nline certificates of insurance," the "[a]bility to add or delete vehicles and drivers online," "[r]isk management expertise to help avoid costly claims," a "24/7 claims hotline," and "[i]n-house attorneys who deliver extraordinary claims results."[2]

7. Prime further touts its business model as follows: "[Prime] is willing to insure any company regardless of past claims history, insurance history, accidents, MVR, safer score, or any other reason that you may be given by other companies for not insuring your business. We can also help the most destitute of companies that are on their last leg because they have been non-renewed, canceled, or violations on their record. [Prime] will handle your claim and take care of you. No matter what your situation is, we can help!"[3]

## The Insurance Policy

8. During all times relevant to this action, RMT relied upon C&P's professed expertise in providing procuring transportation insurance and entrusted C&P to procure adequate liability protection for all aspects of RMT's bus operations.

9. C&P provided RMT with (1) advice on acceptable documentation for compliance with U.S. government regulations, (2) guidance on regulatory compliance and driver qualifications, (3) assistance with managing detailed correspondence regarding accidents, driver logs, vehicle maintenance records, and inspection documentation, (4)

---

[2] See Prime Property & Casualty Insurance Inc., Buses (Admitted) - Prime Insurance Company, at https://www.primeis.com/product-lines/prime-property-and-casualty-inc/buses/ (last accessed May 5, 2025).
[3] Id.

ongoing assistance and follow-ups regarding General Liability audits, emphasizing deadlines and potential implications of incomplete audits, and (5) communications and advocacy regarding concerns to insurance.

10. Mehran Goorabian, as RMT's primary point of contact at C&P, understood that RMT required protection against, among other things, personal injury lawsuits and other potential liabilities associated with RMT's bus operations.

11. RMT, largely operating in Canada although its offices are in New Jersey, is not experienced in insurance, and relied upon Goorabian and C&P to explain and interpret RMT's insurance coverage.

12. For the 2023-2024 policy year, C&P procured for RMT a Commercial Auto insurance policy number PC****1333 (the "Policy"), covering the time period between March 16, 2023 to March 16, 2024.

13. RMT believed, based upon Goorabian's prior and ongoing advice regarding the parameters of the Policy and all pertinent deadlines, that it was fulyl apprised of all limitations of the Policy and that it was extensively protected against liabilities that could result from its auto operations.

14. With regards to liability, the Insuring Agreement of the Policy states as follows:

   1. Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies if caused by an Accident and resulting from the ownership, maintenance, or use of a Scheduled Auto as identified in the Policy, on the Declarations or any Endorsement if:

      a. The Accident occurs during the Policy Period; and

      b. You have complied with all the conditions set forth in Section VII - Conditions of the Policy, including without limitation all the reporting

4

and notification requirements. The Accident occurs within the radius of operation for the Scheduled Auto as identified on the Declarations or any Endorsement and within the United States of America; and

c. The Scheduled Auto is in Commercial Business Use at the time of the Accident; and

d. The Scheduled Auto is being operated by a Scheduled Driver at the time of the Accident.

15. With regards to physical damage, the Insuring Agreement of the Policy states as follows:

1. If Physical Damage coverage is listed on the Declarations or any Endorsement and the associated premium has paid for such coverage, subject to all other terms and conditions of the Policy, we will pay for Physical Damage to any Scheduled Auto with Physical Damage coverage and otherwise covered under this Policy:
   a. Should an Accident causing Physical Damage to a Scheduled Auto result from your commercial operations; and
   b. If such Accident occurs during the Policy Period stated on the Declarations or any Endorsement and within the United States of America or its territories;
   c. You have complied with all the conditions set forth in Section VII - Conditions of the Policy, including without limitation all reporting and notification requirements; and
   d. The Accident occurs within any radius of operation for the Scheduled Auto as identified on the Declarations or any Endorsement and within the United States of America; and
   e. The Scheduled Auto is in Commercial Business Use at the time of the Accident; and
   f. The Scheduled Auto is being operated by a Scheduled Driver at the time of the Accident.

16. Scheduled Autos under the Policy are defined as "All of the vehicles or trailers that are covered under this Policy are specifically identified on the Declarations or any Endorsement as Scheduled Autos. Scheduled Autos must be listed with an associated premium shown and paid for each Scheduled Auto on the Declarations or any Endorsement for coverage to be afforded for such Scheduled Auto."

5

17. The definition of the Scheduled Auto provision further provides that "The Insured is allowed to conduct a one-time road test with each new driver candidate so long as a Scheduled Driver under this Policy is a passenger and is continuously present in the vehicle during the road test. The one-time road test is limited to a 10-mile radius of the Insured's physical location and the Auto being driven must be scheduled on the Policy."

18. A Scheduled Driver is defined as "a driver who is listed on this Policy under the Scheduled Driver Endorsement and for which the Insured has paid all processing and premium charges to add the driver."

19. The bus involved in the accident to which this claim relates was a 2017 Prevost X345 motor coach (the "Bus") was scheduled on the Policy and is therefore covered.

20. At the time of the accident, the Bus had passed all state inspections and was in a safe condition to drive.

## **The Incident at Issue**

21. On or about December 11, 2023, RMT hired Isaac Otuoyo ("Otuoyo") to operate a vehicle on its coach routes within the United States, and between United States and Canada.

22. Otuoyo had trained with other RMT drivers and undergone pre-employment screening prior to January 5, 2024, including route training with a driver trainer. He had passed all necessary drug tests and had a valid commercial driver's license with no evidence of prior traffic violations.

23. On January 5, 2024, Otuoyo drove the Bus with 22 passengers on board on a route between Montreal, Canada and New York, NY.

24. On that date, the Bus was involved in an accident near Lake George, NY (the "Accident"), which resulted in injuries to Otuoyo and several passengers, along with one passenger fatality.

25. Due to a clerical error, Otuoyo had not been listed as a Scheduled Driver at the time of the Accident. However, he was added to the policy by a separate endorsement on January 8, 2024, and Prime accepted the premium payment for the endorsement with no objection.

26. Immediately after the Accident, RMT duly notified Prime of the Accident.

27. By letter dated February 5, 2024, Prime asserted that there was no coverage under the Policy for the Accident because the Accident involved an "unscheduled driver." However, Prime also asserted that "in the event of suits filed that implicate Prime's obligations under the minimum required coverages specified by governing law, it will defend [RMT] and Mr. Otuoyo to the extent required by financial responsibility laws."

28. Prime further noted that "Any liabilities incurred by Prime to pay any final judgment is subject to Prime's right to seek reimbursement from [RMT] for any payments made pursuant to the terms of the MCS-90B [and] Prime reserves the right to seek reimbursement of any defense or indemnity expense it may incur because of otherwise uncovered events and/or as required by New Jersey's minimum financial security requirements."

29. Prime has accepted defense coverage under the relevant financial responsibility laws but has denied coverage for the full liability limit under the Policy, which is $5 million excess of a $5000 self-insured retention.

30. With regards to the damage to the Bus, on September 19, 2024, Prime confirmed that the "Property damage estimate [was] $278,060.18, and [Actual Cash Value was] $273,231.93," with a salvage value of $4,400. Prime deemed the Scheduled Auto a total loss.

31. Although RMT has requested reimbursement for physical damage to the Bus under the first-party provisions of the Policy, to date, Prime has not provided any payments to RMT in connection with the property damage.

32. Without RMT's prior authorization, Prime has scheduled a mediation with the claimants who suffered injury in the Accident.

## Prime's Denial of Insurance Coverage

33. The proper investigation and resolution of insurance claims involves both (A) reviewing the applicable facts and (B) applying the relevant law, including the proper rules of insurance policy construction.

34. RMT has duly notified Prime of the Accident and provided Prime with all requested information.

35. Had RMT notified Prime three days earlier that Otuoyo had been hired as a driver, Prime would have added Otuoyo to the drivers' schedule as a matter of course and without further inquiry. This is demonstrated by Prime's course of dealing with RMT, and by the fact that RMT *did* later schedule Otuoyo as a driver under the Policy immediately upon being notified that he had been hired.

36. At most, the fact that Otuoyo was not initially listed as a scheduled driver constitutes a technical default that does not justify a denial of coverage.

8

37. RMT has complied with all other relevant conditions precedent to coverage under the Policy. To the extent that any condition was not complied with, such compliance is excused as futile given Prime's treatment of the claim.

38. The delay in adding Otuoyo to the Policy did not prejudice Prime, as Prime readily accepted Otuoyo's addition as a Scheduled Driver and accepted the premium for the addition.

39. Prime's position with regards to coverage for the Accident, therefore, is improper, as Prime deemed Otuoyo to be a qualified Scheduled Driver only three days later than his original start date.

40. Assuming for purposes of argument that Prime's interpretation of its insurance coverage is correct, it is evident that C&P did not understand the terms and conditions of the insurance policies before procuring them, and did not provide proper and adequate advice to RMT regarding the extent of coverage for bus operations.

## FIRST CAUSE OF ACTION
(Professional Negligence against C&P)

41. RMT repeats the allegations contained in each of the preceding paragraphs of this Complaint.

42. As the insurance broker for RMT, which agreed and in fact undertook to procure the proper liability insurance for RMT, C&P had a professional obligation to use ordinary care and diligence in placing the appropriate coverage, and to advise RMT fully of all material terms of the coverage, including the extent of insurance coverage for bus operations, and the need to schedule drivers onto the policy before using them to avoid a forfeiture of insurance.

9

43. By failing to secure appropriate insurance coverage for RMT and apprise RMT of all limitations of its existing coverage, C&P breached its professional duty to RMT.

44. As RMT currently has no insurance for indemnity in connection with the Accident because of C&P's failure to procure appropriate and adequate coverage and apprise RMT of the limitations of its existing coverage, RMT has been damaged as the result of C&P's breach of duty in an amount to be proven at trial.

45. In addition, an actual and justiciable controversy exists among the parties, which is appropriate for declaratory relief.

WHEREFORE, RMT demands judgment on this First Cause of Action against C&P as follows:

a. Declaring and adjudging that C&P is obligated to provide RMT with defense and indemnity protection with respect to the Accident, to the extent that such coverage would have been available had the Policy provided proper and adequate coverage for bus operations.

b. Awarding RMT compensatory damages.

c. Awarding RMT its interest and costs of suit.

d. Awarding RMT its attorneys' fees to the extent permitted by law or contract.

e. Awarding RMT such other relief as the Court may deem appropriate.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty against C&P)

46. RMT repeats the allegations contained in each of the preceding paragraphs of this Complaint.

47. The nature of the engagement and relationship between RMT and C&P gave rise to certain fiduciary duties between C&P and its client, RMT.

48. RMT relied upon C&P for its expertise and experience with respect to RMT's insurance requirements, including procuring proper and adequate insurance coverage for bus operations and advice regarding the limitations of its coverage.

49. C&P's failure to obtain the proper coverage for RMT by, among other things, failing to advise and consult with RMT thoroughly and completely regarding bus operations, which has left RMT without coverage for the Accident, represents a violation of the relationship with, and the fiduciary duties owed to, RMT. Because of Prime's claim denial, C&P's conduct has caused significant and material economic damage to RMT.

50. In addition, an actual and justiciable controversy exists among the parties, which is appropriate for declaratory relief.

WHEREFORE, RMT demands judgment on this Second Cause of Action against C&P as follows:

    a. Declaring and adjudging that C&P is obligated to provide RMT with defense and indemnity protection with respect to the Accident, to the extent that such coverage would have been available had the Policy provided proper and adequate coverage for bus operations.

    b. Awarding RMT compensatory damages.

    c. Awarding RMT its interest and costs of suit.

    d. Awarding RMT its attorneys' fees to the extent permitted by law or contract.

    e. Awarding RMT such other relief as the Court may deem appropriate.

### THIRD COUNT
(Breach of Duty to Defend)

51. RMT repeats all of the prior allegations of this Complaint.

52. Alternatively, in the event that C&P's interpretation of the Policy is correct, a justiciable controversy exists between RMT and Prime as to whether Prime's defense obligations

under the Policy will cease upon Prime's payment of indemnity amounts required under applicable financial responsibility laws, as opposed to whether payment of the full $5 million indemnity limit under the Policy is required before Prime's defense obligations are terminated; and, further, whether Prime is entitled to demand reimbursement of any amounts paid on RMT's behalf. This dispute requires Court intervention.

WHEREFORE, RMT requests the entry of judgment on this Third Count against Prime as follows:

    a. Declaring and adjudging that Prime is required to provide a defense to RMT in any suit that may arise from the Accident, unless and until Prime has paid its full indemnity limits of $5 million under the Policy.

    b. Awarding RMT its attorneys' fees as a "successful claimant" under R. 4:42-9(a)(6).

    c. Interest and costs of suit.

    d. Such other relief as the Court may deem just and proper.

## FOURTH COUNT
(Breach of Contract)

53. RMT repeats all of the prior allegations of this Complaint.

54. Prime's conduct, including but not limited to its failure to pay for damage to the Bus, constitutes a breach of contract, as the result of which RMT has been damaged.

WHEREFORE, RMT requests the entry of judgment on this Fourth Count against Prime as follows:

    a. Compensatory damages.

    b. Interest and costs of suit

    c. Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury as to all matters in this action so triable as of right.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff designates Eugene Killian, Jr. of The Killian C&P, P.C. as its trial counsel in this matter.

Dated: July 31, 2025

                                              **THE KILLIAN FIRM, P.C.**
                                              *Attorneys for Plaintiff*

                              By:    *Eugene Killian, Jr.*
                                       Eugene Killian, Jr.
                                       ekillian@tkfpc.com

## R. 4:5-1 CERTIFICATION

EUGENE KILLIAN, JR., of full age, certifies as follows:

1. I am a member of the Bar of the State of New Jersey, and I am a member of The Killian C&P, P.C., the attorneys for plaintiff in this action.

2. To the best of my knowledge, information and belief, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no such action or arbitration proceeding is contemplated. At this time, I am aware of no non-party who should be joined in this action or who is subject to joiner because of potential liability to any party on the basis of the same transactional facts.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: July 31, 2025                              *Eugene Killian, Jr.*
                                                  Eugene Killian, Jr.

.

14