**STRIKOWSKY DRACHMAN & SHAPIRO, PLLC**
**Bruce M. Strikowsky, Esq. – Bar Id. 04496-1996**
**111 Broadway, Suite 1103**
**New York, NY 10006**
**(212) 970-7111**
**bms@strikowsky.com**
***Attorneys for Defendant Prime Property & Casualty Insurance, Inc.***

~~UNITED STATES DISTRICT COURT~~
~~DISTRICT OF NEW JERSEY~~

| | |
|---|---|
| ~~RM TRANSNATIONAL LTD.,~~<br>~~Plaintiff,~~<br>~~v.~~<br>~~CRAGIN & PIKE, INC. and PRIME PROPERTY & CASUALTY INSURANCE, INC.,~~<br>~~Defendants.~~ | ~~ANSWER TO COMPLAINT OF PLAINTIFF RM TRANSNATIONAL AND PRIME'S COUNTERCLAIMS AGAINST RM TRANSNATIONAL AND THIRD-PARTY COMPLAINT AGAINST MANAL WILLIAM~~<br><br>~~Case No.: 2:25cv14666~~ |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RM TRANSNATIONAL LTD.,<br>Plaintiff,<br>v.<br>CRAGIN & PIKE, INC. and PRIME PROPERTY & CASUALTY INSURANCE INC.,<br>Defendants. | **[PROPOSED] AMENDED ANSWER TO COMPLAINT OF PLAINTIFF RM TRANSNATIONAL LTD. AND PRIME'S COUNTERCLAIMS AGAINST RM TRANSNATIONAL LTD. AND THIRD-PARTY COMPLAINT AGAINST MANAL WILLIAM, SM TRANSNATIONAL LTD., AND NORTHBRIDGE GENERAL INSURANCE CORPORATION.**<br><br>Case No.: 2:25cv14666 |
| CRAGIN & PIKE, INC.,<br>Cross-claimant, | |

v.

PRIME PROPERTY & CASUALTY INSURANCE INC.,

Crossclaim Defendant.

PRIME PROPERTY & CASUALTY INSURANCE INC.,

Counterclaimant,

v.

RM TRANSNATIONAL LTD.,

Counterclaim Defendant.

PRIME PROPERTY & CASUALTY INSURANCE INC.,

Third-Party Plaintiff,

v.

MANAL WILLIAM, SM TRANSNATIONAL LTD. DBA SKYWAY COACH LINES, and NORTHBRIDGE GENERAL INSURANCE CORPORATION

Third-Party Defendants.

Defendant Prime Property & Casualty Insurance Inc. ("Prime" or "Answering Defendant") responds to Plaintiff's Complaint and Jury Demand dated July 31, 2025 ("Complaint"), as follows:

**ANSWERING THE NATURE AND BACKGROUND OF THIS ACTION**

1. Paragraph 1 of the Complaint is not an allegation of fact but a summary of Plaintiff's claims in this matter and conclusions of law to which no response is required. To the extent a response is required, Prime denies each and every allegation contained in Paragraph 1 of Plaintiff's Complaint, but begs leave to refer all questions of law to the Court.

**AS AND FOR AN ANSWER TO THE PARTIES**

2. Paragraph 2 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 3 of Plaintiff's Complaint.

3. Paragraph 3 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 3 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4. Paragraph 4 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 4 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 4 of Plaintiff's Complaint.

5. Answering Defendant admits only much of the allegations in Paragraph 5 of Plaintiff's Complaint that allege Prime is a surplus lines insurance company that markets and sells insurance products, including commercial auto coverage, throughout the United States, including in New Jersey. Answering Defendant otherwise denies the allegations in Paragraph 5, including the characterization of Prime's premiums as "substantial."

6. In response to the allegations in Paragraph 6 of Plaintiff's Complaint, Prime admits that the quoted phrases are excerpted from larger content and have appeared on an affiliated website. Answering Defendant denies the allegations in Paragraph 6 of Plaintiff's Complaint to

the extent that Plaintiff characterizes the quoted portions of Prime's website as an assertion as to the contents of any policy of insurance issued by Prime or its obligations to any individual or entity pursuant to any such policy.

7. In response to the allegations in Paragraph 7 of Plaintiff's Complaint, Prime admits that the quoted phrases are excerpted from larger content and have appeared on an affiliated website. Answering Defendant denies the allegations in Paragraph 7 of Plaintiff's Complaint to the extent that Plaintiff characterizes the quoted portions of Prime's website as an assertion as to the contents of any policy of insurance issued by Prime or its obligations to any individual or entity pursuant to any such policy.

8. Paragraph 8 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 8 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 8 of Plaintiff's Complaint.

9. Paragraph 9 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 9 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10. Paragraph 10 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 10 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information

sufficient to form a belief as to the allegations contained in Paragraph 10 of Plaintiff's Complaint.

11. Paragraph 11 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 11 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12. Answering Defendant admits only so much of the allegations contained in Paragraph 12 as allege that a policy of insurance was issued by Prime and begs leave to refer to the original or a true copy of said policy as to the terms and conditions contained therein, and refers all questions as to the construction of the policy to the Court on the trial of this action.

13. Paragraph 13 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 13 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 13 of Plaintiff's Complaint.

14. Answering Defendant denies each and every allegation contained in Paragraph 14 of Plaintiff's Complaint, except admits that a policy of insurance was issued and begs leave to refer to the original or a true copy of said policy as to the terms and conditions contained therein, and refers all questions as to the construction of the policy to the Court on the trial of this action.

15. Answering Defendant denies each and every allegation contained in Paragraph 15 of Plaintiff's Complaint, except admits that a policy of insurance was issued and begs leave to refer to the original or a true copy of said policy as to the terms and conditions contained therein, and refers all questions as to the construction of the policy to the Court on the trial of this action.

16. Answering Defendant denies each and every allegation contained in Paragraph 16 of Plaintiff's Complaint, except admits that a policy of insurance was issued and begs leave to refer to the original or a true copy of said policy as to the terms and conditions contained therein, and refers all questions as to the construction of the policy to the Court on the trial of this action.

17. Answering Defendant denies each and every allegation contained in Paragraph 17 of Plaintiff's Complaint, except admits that a policy of insurance was issued and begs leave to refer to the original or a true copy of said policy as to the terms and conditions contained therein, and refers all questions as to the construction of the policy to the Court on the trial of this action.

18. Answering Defendant denies each and every allegation contained in Paragraph 18 of Plaintiff's Complaint, except admits that a policy of insurance was issued and begs leave to refer to the original or a true copy of said policy as to the terms and conditions contained therein, and refers all questions as to the construction of the policy to the Court on the trial of this action.

19. Answering Defendant denies each and every allegation contained in Paragraph 19 of Plaintiff's Complaint, except admits that a policy of insurance was issued and begs leave to refer to the original or a true copy of said policy as to the terms and conditions contained therein, and refers all questions as to the construction of the policy to the Court on the trial of this action.

20. Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21. Paragraph 21 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 21 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 21 of Plaintiff's Complaint.

22. Paragraph 22 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 22 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 22 of Plaintiff's Complaint.

23. Paragraph 23 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 23 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24. Paragraph 24 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 24 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25. Answering Defendant denies each and every allegation contained in Paragraph 25 of Plaintiff's Complaint, except admits that subsequent to a request first made to Prime on January 8, 2024, Otuoyo was added to a policy of insurance by way of a separate endorsement dated January 16, 2024 with a retroactive effective date of January 8, 2024.

26. Answering Defendant admits only so much of Paragraph 26 of Plaintiff's Complaint as alleges that RM Transnational reported the Accident to Prime on January 8, 2024, and denies the balance of the allegations contained in this paragraph.

27. Answering Defendant denies each and every allegation contained in Paragraph 27

of Plaintiff's Complaint, except admits that a letter was transmitted to Plaintiff on February 5, 2024, and begs leave to refer to the original or a true copy of said letter as to the content of the statements contained therein, and refers all questions of law to the Court on the trial of this action.

28. Answering Defendant denies each and every allegation contained in Paragraph 28 of Plaintiff's Complaint, except admits that a letter was transmitted to Plaintiff on February 5, 2024, and begs leave to refer to the original or a true copy of said letter as to the content of the statements contained therein, and refers all questions of law to the Court on the trial of this action.

29. Answering Defendant denies each and every allegation contained in Paragraph 29 of Plaintiff's Complaint, except admits that a letter was transmitted to Plaintiff on February 5, 2024, and begs leave to refer to the original or a true copy of said letter as to the content of the statements contained therein, and refers all questions of law to the Court on the trial of this action.

30. Answering Defendant denies each and every allegation contained in Paragraph 30 of Plaintiff's Complaint, except admits that correspondence was transmitted to Plaintiff on September 19, 2024, and begs leave to refer to the original or a true copy of said correspondence as to the content of the statements contained therein, and refers all questions of law to the Court on the trial of this action.

31. Answering Defendant admits only so much of the allegations contained in Paragraph 32 of the Complaint as allege that RMT requested reimbursement from Prime for physical damage to the Bus and Answering Defendant has not issued any payments to RMT in connection with its request for reimbursement, and denies all other allegations contained in Paragraph 31 of Plaintiff's Complaint.

32. Answering Defendant denies each and every allegation contained in Paragraph 32 of Plaintiff's Complaint, but admits that RMT's defense counsel attempted to initiate a mediation

for July 30, 2025 (which was communicated by Prime to RMT no later than May 1, 2025) but, that mediation had been cancelled in advance for rescheduling.

33. The allegations contained within Paragraph 33 of Plaintiff's Complaint are statements of law to which no response by Answering Defendant is required. To the extent an answer is required, if Paragraph 33 of Plaintiff's Complaint can be construed as implying or suggesting any wrongful or improper conduct on the part of Answering Defendant, or any employee or agent thereof, in any manner whatsoever, Answering Defendant denies the allegations contained within Paragraph 33 of Plaintiff's Complaint.

34. Paragraph 34 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no answer is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 34 of Plaintiff's Complaint, specifically noting that all requested information has not been supplied.

35. Paragraph 35 of Plaintiff's Complaint is not an allegation of fact but a conjecture of counsel to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 35 of Plaintiff's Complaint.

36. Paragraph 36 of Plaintiff's Complaint is not an allegation of fact but improper argument of counsel to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 36 of Plaintiff's Complaint and begs leave to refer to the original or a true copy of the Prime policy, referring all questions of law to the Court.

37. Paragraph 37 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 37 of Plaintiff's Complaint.

38. Paragraph 38 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 38 of Plaintiff's Complaint.

39. Paragraph 39 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 39 of Plaintiff's Complaint.

40. Paragraph 40 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 40 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 40 of Plaintiff's Complaint.

**AS AND FOR AN ANSWER TO PLAINTIFF'S FIRST CAUSE OF ACTION**

41. Answering Defendant repeats, reiterates, and realleges each and every response to the allegations contained in the paragraphs above, as though more fully set forth at length herein.

42. Paragraph 42 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 42 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 42 of Plaintiff's Complaint.

43. Paragraph 43 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 43 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information

sufficient to form a belief as to the allegations contained in Paragraph 43 of Plaintiff's Complaint.

44. The allegations contained within Paragraph 44 of Plaintiff's Complaint are statements of law to which no response by Answering Defendant is required. To the extent that Paragraph 44 of Plaintiff's Complaint can be construed as implying or suggesting any wrongful or improper conduct on the part of Answering Defendant, or any employee or agent thereof, in any manner whatsoever, Answering Defendant denies the allegations contained within Paragraph 44 of Plaintiff's Complaint.

45. Paragraph 45 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 45 of Plaintiff's Complaint.

**AS AND FOR AN ANSWER TO PLAINTIFF'S SECOND CAUSE OF ACTION**

46. Answering Defendant repeats, reiterates, and realleges each and every response to the allegations contained in the paragraphs above, as though more fully set forth at length herein.

47. Paragraph 47 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 47 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 47 of Plaintiff's Complaint.

48. Paragraph 48 of Plaintiff's Complaint contains no factual allegations or assertions against the Answering Defendant and, therefore, no response to the same by Answering Defendant is required. To the extent that a response by Answering Defendant to Paragraph 48 of Plaintiff's Complaint is deemed to be required, Answering Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 48 of Plaintiff's Complaint.

49. The allegations contained within Paragraph 49 of Plaintiff's Complaint are statements of law to which no response by Answering Defendant is required. To the extent that Paragraph 49 of Plaintiff's Complaint can be construed as implying or suggesting any wrongful or improper conduct on the part of Answering Defendant, or any employee or agent thereof, in any manner whatsoever, Answering Defendant denies the allegations contained within Paragraph 49 of Plaintiff's Complaint.

50. Paragraph 50 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 50 of Plaintiff's Complaint.

**AS AND FOR AN ANSWER TO PLAINTIFF'S THIRD CAUSE OF ACTION**

51. Answering Defendant repeats, reiterates, and realleges each and every response to the allegations contained in the paragraphs above, as though more fully set forth at length herein.

52. Paragraph 52 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 52 of Plaintiff's Complaint.

**AS AND FOR AN ANSWER TO PLAINTIFF'S FOURTH CAUSE OF ACTION**

53. Answering Defendant repeats, reiterates, and realleges each and every response to the allegations contained in the paragraphs above, as though more fully set forth at length herein.

54. Paragraph 52 of Plaintiff's Complaint is not an allegation of fact but a conclusion of law to which no response is required. To the extent an answer is required, Answering Defendant denies each and every allegation contained in Paragraph 52 of Plaintiff's Complaint.

**SEPARATE DEFENSES**

**FIRST SEPARATE DEFENSE**

Plaintiff's claims against Prime fail to state a cause of action upon which relief may be granted.

**SECOND SEPARATE DEFENSE**

Plaintiff failed to comply with the insurance policy terms and conditions and provisions which constitutes a bar to any action or recovery under said policy of insurance, and therefore an action may not be maintained against this Answering Defendant.

**THIRD SEPARATE DEFENSE**

Any defense, reservation of rights, or denial of coverage asserted is not waived, and the Answering Defendant is not estopped from asserting coverage defenses due to any pre-litigation communications or participation in the defense under a reservation of its rights.

**FOURTH SEPARATE DEFENSE**

The Answering Defendant has not voluntarily assumed any duty to defend or indemnify any individual or entity beyond the terms of its policy, and no equitable contribution or subrogation is owed unless required by contract or statute.

**FIFTH SEPARATE DEFENSE**

Prime reasonably relied on the apparent authority of Defendant, Cragin & Pike, Inc., to act as an agent of Plaintiff and to bind Plaintiff to the subject insurance agreement and all terms and conditions therein.

**SIXTH SEPARATE DEFENSE**

Plaintiff is not entitled to the relief it seeks against Prime because on March 16, 2023, Plaintiff's President and/or authorized representative, Manal William, signed and executed on behalf of Plaintiff a "Personal Guarantee and Indemnity Agreement" which provides that Plaintiff must reimburse Prime for any payments made by Prime that it would not have been obligated to

make under the provisions of the insurance policy.

**SEVENTH SEPARATE DEFENSE**

Fortuity of loss is a required element of an insurance policy, requiring denial of the relief sought by plaintiff.

**EIGHTH SEPARATE DEFENSE**

The conditions of the Prime policy and of the associated policy receipt require faithful conduct by the Insure in the submission of materials to Prime, with the express understanding Prime would rely on such representations which were known to and agreed upon by Plaintiff, the violation of which bars the remedies sought in the Complaint.

**NINTH SEPARATE DEFENSE**

Plaintiff's claims are barred by the doctrine of unclean hands.

**TENTH SEPARATE DEFENSE**

Plaintiff is estopped to seek coverage under the Prime policy

**ELEVENTH SEPARATE DEFENSE**

Plaintiff's claims are barred by laches.

**TWELFTH SEPARATE DEFENSE**

The Prime policy contains exclusions which render coverage inapplicable to any judgment, verdict or settlement attributable to punitive damages.

**THIRTEENTH SEPARATE DEFENSE**

Any damages assessed against RMT attributable to negligent hiring or retention are excluded from coverage under the Prime policy.

**RESERVATION OF RIGHT TO ASSERT ADDITIONAL SEPARATE DEFENSES**

Prime reserves the right to assert other separate defenses as may become appropriate based

on information it acquires through discovery or otherwise in the course of this litigation.

**WHEREFORE**, Answering Defendant Prime respectfully requests judgment dismissing Plaintiff's Complaint with prejudice, together with an award of legal fees and costs of suit, and such further relief as the Court shall deem just and equitable or, in the alternative, entry of a declaratory judgment that Prime has no duty to defend or indemnify Plaintiff in connection with the January 5, 2024 Accident.

**PRIME'S ANSWER TO DEFENDANT CRAGIN & PIKE, INC.'S CROSSCLAIM**

**AS AND FOR AN ANSWER TO COUNT ONE**

**CONTRIBUTION**

1. Answering Defendant repeats, reiterates, and realleges each and every response to the allegations contained in the paragraphs above, as though more fully set forth at length herein.

2. Denied.

**COUNT TWO**

**INDEMNIFICATION**

3. Answering Defendant repeats, reiterates, and realleges each and every response to the allegations contained in the paragraphs above, as though more fully set forth at length herein.

4. Denied.

**WHEREFORE**, Prime respectfully demands judgment dismissing the crossclaim against it, with prejudice, together with an award of legal fees and costs of suit, and such further relief as the Court shall deem just and equitable

**PRIME'S COUNTERCLAIMS AGAINST RM TRANSNATIONAL AND THIRD-PARTY COMPLAINT AGAINST MANAL WILLIAM, SM TRANSNATIONAL LTD., AND NORTHBRIDGE GENERAL INSURANCE CORPORATION**

Defendant/Third-Party Plaintiff Prime Property & Casualty Insurance, Inc. ("Prime"), by way of counterclaim against plaintiff RM Transnational Ltd. ("Plaintiff" or "RMT") and third-party complaint against third-party defendants Manal William ("Third-Party Defendant" or "William"), SM Transnational Ltd. DBA Skyway Coach Lines ("SMT"), and Northbridge General Insurance Corporation ("Northbridge") hereby alleges:

**THE PARTIES**

1. Prime is an insurance company formed under the laws of the State of Illinois with a principal place of business in the State of Utah.

2. Upon information and belief, Plaintiff RMT is a transportation service provider formed under the laws of the State of Delaware with a principal place of business in East Rutherford, New Jersey.

3. Upon information and belief, Third-Party Defendant William is a citizen of Ontario, Canada, with his principal residence located in the town of Markham, Ontario, Canada.

4. Upon information and belief, Third-Party Defendant SMT is a transportation service provider formed under the laws of Canada with a principal place of business in the town of Markham, Ontario, Canada.

5. The Court has personal jurisdiction over SMT because, *inter alia*, SMT purposefully availed itself of the privileges of conducting business in the State of New Jersey, thereby invoking the benefits and protections of New Jersey law and foreseeably submitting to the jurisdiction of this Court, and further because, upon information and belief, SMT maintains employees, facilities and/or business operations in New Jersey.

6. SMT is further subject to jurisdiction in New Jersey by virtue of the operating authority or other terms governing the transportation routes it routinely operates in the jurisdiction,

7. Upon information and belief, Third-Party Defendant Northbridge is an insurance company formed under the laws of Canada with a principal place of business located in Toronto, Ontario, Canada.

~~3.~~8. Northbridge is a foreign insurance company based in Canada; however, upon information and belief, the Court nevertheless has personal jurisdiction over Northbridge pursuant to the terms of its insurance policy and by operation of applicable federal regulations, including but not limited to 49 C.F.R. § 387.315(d), and/or because Northbridge has designated an individual located in New York, New York as its agent in the United States. Since Northbridge's designated agent for service of process resides within 100 miles of the location where the summons was issued, Fed. R. Civ. P. 4(k)(1)(B) provides that this Court may exercise personal jurisdiction over Northbridge.

**FACTUAL ALLEGATIONS**

**A. The Prime Policy, PRF, and PGIA**

~~4.~~9. Prime issued a commercial business auto insurance policy, number PC23031333, which identifies RMT as a Named Insured and has a policy period of March 16, 2023 to March 16, 2024 ("Prime Policy"). A copy of the Prime Policy is attached hereto as Exhibit A.

~~5.~~10. New Jersey law permits insurers to issue policies to certain difficult-to-insure risks identified as special risk or on an exportable basis.

~~6.~~11. The Prime policy was issued pursuant to New Jersey law that exempts admitted carriers from certain regulations.

~~7.~~12. Policies issued on an exportable or special-risk basis are not required to adhere to the regulations and statutes promulgated in New Jersey that govern the terms of a commercial business auto insurance policy.

~~8.~~ 13. The Prime Policy specifically states at its outset:

> THIS COMMERCIAL BUSINESS AUTO INSURANCE POLICY (the "Policy") is a manuscript policy, meaning it is a negotiated agreement between the Named Insured and the Insurer, and as such it may differ significantly from liability policies offered by other companies. This Policy contains very strict claim reporting requirements which must be followed as conditions precedent to coverage. The terms of this Policy are contractual and are not merely recitals and all information supplied by any Insured to obtain coverage, constitute warranties of the Insured to the Insurer.
>
> **Coverage is strictly limited to scheduled Autos operated by scheduled drivers** and operations and at those locations listed, described and defined herein.
>
> [Exhibit A (emphasis added).]

~~9.~~ 14. The Prime Policy, under the heading "Declarations" states that:

> THIS COMMERCIAL AUTO INSURANCE POLICY (the "Policy") is **strictly limited to those activities and operations defined herein. Coverage is provided only for scheduled autos and drivers**.
>
> [Exhibit A (emphasis added).]

~~10.~~ 15. The Prime Policy contains a "Scheduled Drivers Endorsement," ACA-99-03, which identified 5 (five) scheduled drivers and stated:

> New drivers and operators will not be added to this Policy until the Insured provides in writing the driver's name, date of birth, and driver's license number to the Insurer. Acceptance by the Insurer is subject to underwriting approval and may require additional premium.
>
> [Exhibit A.]

~~11.~~ 16. The Insuring Agreement of Section I – Liability Coverage of the Prime Policy states, in part:

> Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies if

caused by an Accident and resulting from the ownership, maintenance, or use of a Scheduled Auto as identified in the Policy, on the Declarations or any Endorsement if:

* * *

d. The Scheduled Auto is being operated by a Scheduled Driver at the time of the Accident.

[Exhibit A.]

~~12.~~ 17. The Insuring Agreement of Section II – Physical Damage Coverage of the Prime Policy states, in part:

If Physical Damage coverage is listed on the Declarations or any Endorsement and the associated premium has paid for such coverage, subject to all other terms and conditions of the Policy, we will pay for Physical Damage to any Scheduled Auto with Physical Damage coverage and otherwise covered under this Policy:

* * *

f. The Scheduled Auto is being operated by a Scheduled Driver at the time of the Accident.

[Exhibit A.]

~~13.~~ 18. Section III – WHO IS AN INSURED? of the Prime Policy states, in part:

B. An "Insured" is also any Scheduled Driver of an otherwise Scheduled Auto who is maintaining or operating the Schedule Auto for commercial business operations.

[Exhibit A.]

19. Section VII – Conditions of the Prime Policy provides, in part:

C. Other Insurance

1. If other valid and collectible insurance, whether primary, excess, or contingent or on any other basis, including any form of self-insurance or SIR, is available to an Insured for a loss covered under this Policy, then:

a. This Coverage is excess over the other insurance, including any form of self-insurance or SIR; and

Formatted: Indent: Left: 1", Hanging: 0.25", Right: 1", Line spacing: single

b. We will have no duty to defend any Claim or Suit that any other insurer has a duty to defend. If no other insurer or issuer of a form of self-insurance or SIR defends, we may undertake to do so, but we will then be entitled to enforce the Insured's rights against those other insurers, self-insurers, or self-insured entity for defense costs, contribution, or indemnity.

2. When both this Policy and other insurance, whether primary, excess, or contingent or on any other basis, including any form of self-insurance or SIR, apply to the loss on the same basis, we will not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

a. If all such other insurance provides for contribution by equal shares, we shall not be liable for a greater proportion of such loss than that which would be payable if each Insurer or self-insured entity contributes an equal share until the share of each Insurer or self-insured entity equals the lowest applicable Limits of Liability under any one policy or the full amount of the loss is paid. With respect to any amount of the loss not so paid, each remaining Insurer or self-insured entity will then contribute an equal share of the remaining amount of the loss until each such Insurer has paid its limit in full or the full amount of the loss is paid.

b. If all such other insurance does not provide for contribution by equal shares, the Insurer shall not be liable for a greater proportion of such loss than the applicable Limits of Liability under this Policy bears to the total applicable Limits of Liability of all other valid and collectible insurance applicable to such loss.

{Exhibit A.}

~~11.~~20. Section VII – Conditions of the Prime Policy further provides, in part:

Formatted: Indent: Left: 1", Hanging: 0.25", Right: 1", Space After: 0 pt, Line spacing: single

P. Given the unique feature of the coverage being provided to the Insured, coverage has been quoted, bound and issued with the express condition that the Insured acknowledge receipt and acceptance of the terms and conditions of coverage by returning the Receipt Form provided herewith. Coverage is subject to cancellation in the event the Insured fails to acknowledge receipt and acceptance of the terms and conditions of coverage by returning the Receipt Form provided.

[Exhibit A.]

~~15.~~21. RMT did return the Receipt Form referenced in Condition P of the Prime Policy, executed by Manal William. A copy of the signed Receipt Form is attached hereto as Exhibit B.

~~16.~~22. The receipt form requires the signatory to "understand, acknowledge, and agree" that :

> 1. You have received a copy of the Policy and all Endorsements listed in the Declarations. (We sent the Policy to your broker or agent who is responsible for providing the Policy to you. If you have not received the Policy, please contact your broker or agent immediately and request it.)
>
> * * *
>
> 3. Coverage is limited to the activities and operations and at those locations listed and defined in the Declarations and in the Policy. You are responsible for ensuring that the Insurer has current address and contact information to reach you.
>
> * * *
>
> 11. In my personal capacity, I undertake the obligation to pay within 15 calendar days all premiums and/or Self-Insured Retentions. My duty to pay such sums shall not be limited by sale, merger, dissolution, bankruptcy, insolvency or a change in management.
>
> [Exhibit B.]

~~17.~~23. Section VIII – Definitions of the Prime Policy contains the following definition:

> Z. "Scheduled Driver" means a driver who is listed on this Policy under the Scheduled Driver Endorsement and for which the Insured has paid all processing and premium charges to add the driver.
>
> [Exhibit A.]

~~18.~~24. At the time of the issuance of the Prime Policy, Issac Otuoyo ("Otuoyo") was not listed as a Scheduled Driver.

~~19.~~25. The Prime Policy contains an MCS-90B Endorsement, which states in relevant part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 18 of the Bus Regulatory Reform Act of 1982 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.
>
> [Exhibit A.]

~~20.~~26. The Prime Policy's MCS-90B Endorsement also states:

> The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
>
> [Exhibit A.]

~~21.~~27. In consideration of Prime's issuance of the Prime Policy to RMT, Third-Party Defendant William, on behalf of RMT and in his individual capacity, executed a "Personal Guarantee and Indemnity Agreement" ("PGIA") on March 16, 2023. The PGIA states, in part:

> 3. The Insured has the responsibility to reimburse Prime for any Non-Covered Claim which Prime must pay as a result of any Financial Responsibility Law.
>
> 4. The Insured intends to prevent the occurrence of Non-Covered Claims that would expose Prime to any obligations under any Financial Responsibility Law. Accordingly, the Insured agrees that it will, when required by the Policy, schedule all vehicles, drivers and/or cargo with Prime by providing underwriting information required by Prime and paying all applicable premiums or other fees. If, however, Prime does not agree to

cover the proposed driver, auto or cargo, the Insured must obtain insurance coverage for unscheduled drivers, autos, and/or cargo as set forth below.

## AGREEMENT

**1. Indemnity**

The Insured agrees to indemnify, defend and hold Prime harmless from any and all losses or claims arising out of a Non-Covered Claim. The Insured acknowledges its obligations to Prime for a Non-Covered Claim are not limited by the Limits of Liability of the Policy, and include attorney's fees and costs incurred in an effort to enforce this Agreement.

* * *

If Prime elects, at its sole option and discretion, to defend, investigate or settle a Non-Covered Claim, the Insured agrees to fully cooperate with Prime in regard to that defense.

The Insured further agrees to promptly reimburse Prime for:

a. All costs and attorneys' fees Prime incurs to defend any Insured;

b. Reasonable loss adjustment expenses to cover Prime's overhead costs to handle and defend such a claim or lawsuit, consisting of all of the costs and attorneys' fees that Prime incurs to defend any insured in such a claim or lawsuit;

c. All amounts Prime pays in settlement or to indemnify any Insured in regard to any Non-Covered Claim;

d. All costs and attorneys' fees Prime may incur in its sole discretion to seek a defense or indemnity for any Insured from any other insurer, including any other insurer that may have issued a policy of insurance constituting Non-Scheduled Driver's Insurance or Non-Scheduled Auto/Cargo Insurance;

e. At Prime's option, all premiums due, whether retroactively, prospectively or both, including premiums due for unscheduled drivers or for unscheduled vehicles being operated by or on behalf of the Insured.

* * *

> The Insured further agrees to pay all premiums (SIRs), and/or deductibles owed under the terms of the Policy, including but not limited to the minimum earned premium due. The Insured further agrees to reimburse and indemnify Prime for any and all attorney fees and costs incurred in an effort to enforce this Agreement.
>
> [A copy of the PGIA is attached hereto as Exhibit C.]

~~22.~~28. The PGIA includes a section entitled "Personal guarantee and authority to sign for the Insured," which states:

> The undersigned represents that he or she has full authority on behalf of the Insured to execute this Agreement and to bind the Insured to these terms.
>
> In addition, the undersigned, in his or her individual capacity, personally undertakes the financial obligations set forth in this Agreement in the event the Insured refuses or fails to indemnify and hold Prime harmless as set forth above. The undersigned agrees and acknowledges that his or her personal guarantee shall continue even if the Insured is sold, transferred or dissolved or if the Insured shall become bankrupt or insolvent.
>
> [Exhibit C.]

**B. RMT's Prior Requests to Schedule Drivers onto the Prime Policy**

Formatted: Font: Bold

Formatted: List Paragraph, Indent: Left: 0", Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

~~23.~~29. Following the issuance of the Prime Policy and execution of the Receipt Form, RMT later proposed at various times during the effective period of the Prime Policy that certain individuals be added as Scheduled Drivers and submitted credentials for such individuals to Prime seeking required approval of those individuals as Scheduled Drivers in exchange for additional premium.

~~24.~~30. On September 13, 2023, Prime received correspondence seeking to add a driver to the Prime Policy and requesting that the effective date of coverage for the driver be backdated to August 16, 2023. A copy of this correspondence is attached hereto as Exhibit D.

~~25.~~31. Prime responded on September 18, 2023, requesting that RMT provide additional information, including an explanation of why RMT was requesting to backdate the effective date

of coverage for the driver. A copy of this correspondence is attached hereto as Exhibit E.

~~26.~~32. A September 26, 2023 email from Mano Balasubramaniam (writing on behalf of RMT) in response, states, in part:

> This driver . . . was only a temporary driver immediately added for the trip since out original driver didn't show up. We couldn't cancel the trip for our long term customer. Genuinely we weren't aware even if the driver were to drive 10 min across the street need to add to the policy. I had spoke to prime Risk Management explained the situation as well. He provided us more guidance.
>
> [A copy of this correspondence is attached hereto as Exhibit F.]

~~27.~~33. In a November 16, 2023 email, Liz O'Donnell, a broker on behalf of RMT, requested that Prime add twenty-eight new Scheduled Drivers to the Prime Policy, stating, in part:

> The insured would like [the drivers] added [to the Prime Policy] in case these part time/seasonal employees who are qualified are needed to drive. He also intends on adding several buses soon. He does not want to have an employee available to be on standby and not be approved to drive.
>
> [A copy of this correspondence is attached hereto as Exhibit G.]

**C. The Accident and RMT's Subsequent Request to Add Otuoyo as a Scheduled Driver to the Prime Policy**

Formatted: List Paragraph, Indent: Left: 0", Numbered + Level: 1 + Numbering Style: A, B, C, ... + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

~~28.~~34. At no point prior to January 8, 2024, did Prime receive any request to add Otuoyo as a Scheduled Driver on the Prime Policy.

~~29.~~35. Prior to the alleged accident on January 5, 2024, RMT never requested to add Otuoyo as a scheduled driver on the Prime Policy, nor did RMT ever obtain Prime's approval to include Otuoyo on the Prime Policy.

~~30.~~36. Upon information and belief, on or around January 5, 2024, Otuoyo was operating a 2017 Prevost bus (the "Bus"), New Jersey license plate AY994N (VIN 4RKG33490H9737327) on Interstate 287 South near Lake George, New York, when Otuoyo lost control of the Bus,

causing it to overturn ("Accident").

~~31.~~37. Upon information and belief, at the time of the Accident, the Bus was traveling with twenty-two passengers from Montreal, Canada, to New York, New York.

~~32.~~38. Upon information and belief, the Accident ultimately resulted in at least one fatality and multiple other passengers sustaining injuries.

~~33.~~39. Prime was first provided notice of the Accident on or about January 8, 2024.

~~34.~~40. On that same date, an agent for RMT notified Prime that RMT would be submitting a request to add Otuoyo as a Scheduled Driver and that Otuoyo was involved in "an incident last Friday [January 5, 2024]." See Exhibit H attached hereto.

~~35.~~41. A quote to add Otuoyo as a Scheduled Driver was sent to RMT and Cragin on January 16, 2024. Ibid.

~~36.~~42. The endorsement adding Otuoyo to the Prime Policy as a Scheduled Driver provides that his status as such had an effective date of January 8, 2024, the date on which he was first requested to be added as a Scheduled Driver.

~~37.~~43. In a letter dated February 5, 2024, Prime advised RMT that defenses to coverage existed on the basis that Otuoyo was not a scheduled driver on the Prime Policy on the date of the accident, and that the terms of the Policy and the PGIA entitled Prime to recovery of any damages it may incur, the insurer otherwise reserving rights. The letter also reserved Prime's rights with respect to the MCS-90B Endorsement.

~~38.~~44. The Bus is a scheduled auto on the Prime Policy.

45. Otuoyo was not identified in the Prime Policy as a scheduled driver as of the date and time of the Accident.

**~~39.~~D. The Northbridge Policy and Prime's Tender to Northbridge**

Formatted: List Paragraph, Indent: Left: 0", Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

46. Both the insurance application materials which RMT had initially submitted to Prime and the materials produced by RMT throughout the ongoing discovery proceedings in the present action have indicated that SMT and RMT are affiliated entities.

47. For instance, Plaintiff has previously represented to Prime that RMT is a "sister company" of SMT. See, e.g., the discovery documents produced by RMT which have been Bates-Numbered RM-0359 and RM-0365, attached hereto as Exhibits I and J, respectively.

48. On information and belief, Northbridge issued a commercial auto insurance policy, number P04139146-1 (the "Northbridge Policy"), to SMT for a policy period encompassing the date of the January 5, 2024 Accident.

49. Prime became aware of the Northbridge Policy as a result of its investigation of an underlying lawsuit which was brought by a bus passenger who was purportedly injured as a result of the Accident under case caption *Felipe P. Malavazi v. RM Transnational Ltd. et al.*, Docket No. CAM-L-000563-25, in the Superior Court of New Jersey, Camden County (the "Malavazi Action").

50. Although the initial Complaint from the Malavazi Action did not identify SMT as a defendant to the Malavazi Action, the plaintiff in that underlying action was ultimately granted leave to file an amended complaint naming SMT as an additional defendant.

51. The Malavazi Action plaintiff successfully argued in support of his motion for leave to amend that SMT "should be included and substituted as a party defendant responsible for operating and/or maintaining the bus involved in [the Accident]." See Exhibit K attached hereto at ¶ 6.

52. The Malavazi Action plaintiff noted, among other things, that SMT:

- Ordered Otuoyo's DOT Drug Test on behalf of RMT;

Formatted: Justified, Right: 0.75"

- Is apparently affiliated with "Skyway Travels," the entity which had arranged and paid for Otuoyo's hotel accommodation the night before the Accident;
- Is apparently affiliated with "Skyway Tours," an entity which is listed on several bus maintenance records and which is also the carrier identified on the New Jersey "Autobus Certificate of Compliance" for the bus involved in the Accident; and
- Is listed on numerous pre-Accident repair and maintenance records for the bus that was involved in the Accident.

[Id., ¶ 7]

Formatted: Normal, Indent: Left: 1", Right: 0.75", No bullets or numbering, Widow/Orphan control

53. Recent deposition testimony provided by RMT's corporate representative in the Malavazi Action further confirmed that RMT improperly utilized SMT's resources, licenses, regulatory authorizations and/or credentials for the benefit of RMT. For example, although the RMT representative emphasized in his testimony that RMT was billed for and ultimately paid for Otuoyo's DOT Drug Test, the RMT representative nevertheless admitted that Plaintiff had relied on the use of SMT's licenses in order to arrange the DOT Drug Test. See Exhibit L attached hereto at pp. 34:24-35:9; 37:5-18.

Formatted: No underline

54. The deposition testimony from RMT's corporate representative also confirmed that SMT was involved in arranging Otuoyo's hotel accommodation for the night before the Accident. Id. at pp.78:23-79:23.

55. Around the time that the Malavazi Action parties were preparing to begin fact depositions, Prime was informed by the defense counsel that it had retained to defend its insured in the Malavazi Action that RMT had represented to its purported business partner, FlixBus Inc.

("FlixBus"), that a SMT-employed driver was driving the relevant bus on the date of the Accident.

56. More specifically, FlixBus noted that the driver credentials which were reported to it in relation to the route on which the Accident occurred were for an individual named San Thava ("Thava").

57. Upon information and belief, Thava was an employee of SMT at the time of the Accident and not an employee of RMT.

58. As of the date of the Accident, Otuoyo was neither registered in FlixBus's system nor did he have any login credentials which would allow him to report his involvement in a given bus route to FlixBus.

59. After learning of SMT's involvement in the Accident via the aforementioned developments occurring in the Malavazi Action, Prime contacted Northbridge by way of a letter dated October 1, 2026 (the "Tender Letter"), wherein Prime tendered the defense of RMT, SMT, FlixBus, and Otuoyo to Northbridge with regard to the Malavazi Action as well as with regard to another underlying action arising from the Accident which was brought in the Nassau County Supreme Court of the State of New York under Index No. 627352/2025 (the "Colin Action"). See Exhibit L attached hereto.

60. Northbridge replied to the Tender Letter by way of a letter dated November 10, 2026 (the "Tender Response"). See Exhibit M attached hereto.

61. The Tender Response advised that Northbridge's coverage investigation remains ongoing and requested that Prime provide certain documents and other materials to Northbridge in furtherance of its investigation.

62. As of November [DATE TBD], 2026, Northbridge has not provided a copy of the Northbridge Policy to Prime.

**Formatted:** Highlight

63. Upon information and belief, since ~~SMT was involved in the Accident, both~~ RMT and Otuoyo are persons who may be held liable for SMT's use or operation of the vehicle involved in the Accident and/or by virtue of the terms of the Northbridge policy's "Who is an Insured" provision or applicable statutory and regulatory requirements, RMT and Otuyo qualify ~~either~~ as insureds ~~and/or as additional insureds~~ under ~~the terms of~~ the Northbridge Policy.

64. Accordingly, RMT and Otuoyo are entitled to coverage under the Northbridge Policy, and Northbridge has a duty to defend and/or indemnify both RMT and Otuoyo with regard to any claims and/or suits arising from the Accident.

**FIRST CAUSE OF ACTION**

~~40.~~65. Prime repeats and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

~~41.~~66. Otuoyo was not a Scheduled Driver on the Prime Policy at the time of the Accident.

~~42.~~67. The Prime Policy clearly and unambiguously states at its outset and throughout its terms and conditions that Prime will only have a duty to defend or pay damages for RMT's liability for bodily injury, or for damage to a Scheduled Vehicle, caused by an Accident if a Scheduled Vehicle is being operated by a Scheduled Driver at the time of said Accident.

~~43.~~68. Prime has no duty to pay any damages incurred by RMT, Otuoyo, or any other individual or entity (including but not limited to SMT) that may qualify as an insured on the Prime Policy, may become liable for, or pay any damages caused to the Bus, as a result of the Accident because Otuoyo was not a Scheduled Driver at the time of the Accident and therefore the Accident does not come within the Insuring Agreement of the Prime Policy.

~~44.~~69. Prime has no duty to defend RMT, Otuoyo, or any other individual or entity (including but not limited to SMT) that may qualify as an insured on the Prime Policy, in any law suit or any other claim arising out of the Accident because the Accident does not come within the

Insuring Agreement of the Prime Policy.

**WHEREFORE**, Prime demands judgment as follows:

(a) Declaring that Prime owes no duty under the Prime Policy to defend or indemnify RMT, Otuoyo, or any other individual/entity (including but not limited to SMT) against any claims arising out of the Accident;

(b) For damages, interest, attorneys' fees and costs of suit; and

(c) For such other and further relief as the Court deems equitable and just.

**SECOND CAUSE OF ACTION**

~~45.~~ 70. Prime repeats and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

~~46.~~ 71. While Prime denies that it will be obligated under the MCS-90B Endorsement to pay any judgment against RMT or Otuoyo because insurance thereunder is unavailable for the Accident, should it be adjudged that Prime is so obligated, RMT is obligated to reimburse Prime pursuant to that endorsement "for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."

**WHEREFORE**, Prime demands judgment against RMT as follows:

(a) For reimbursement of, and for full and complete indemnification from, any payment made by Prime on account of the Accident, as well as any payments by Prime that it would not have been obligated to make under the provisions of the Prime Policy except for the MCS-90 endorsement, to include all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing by reason of the Accident;

(b) For damages, interest, attorneys' fees and costs of suit; and

(c) For such other and further relief as the Court deems equitable and just.

THIRD CAUSE OF ACTION

~~47.~~72. Prime repeats and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

~~48.~~73. Any claim for any loss or damages arising out of the Accident is a Non-Covered Claim, as that term is defined in the PGIA.

~~49.~~74. RMT and William are obligated by the PGIA to indemnify Prime from any and all costs, attorneys' fees, expenses, settlement proceeds or other funds Prime may expend or be deemed to owe by reason of the Accident because such expenditures arise out of a Non-Covered Claim.

**WHEREFORE**, Prime demands the entry of declaratory judgment adjudicating its rights and obligations pertaining to the Accident and, on its counterclaims and third-party claims, against Plaintiff RMT and Third-Party Defendant William, adjudging and or/declaring as follows:

(a) Prime has no duty to defend or indemnify RMT or Otuoyo against any claims arising from or relating to the Accident;

(b) That Prime is entitled to reimbursement of all defense-related expenses and for full and complete indemnification from any future payment made by Prime on account of the Accident, whether pursuant to the Prime Policy or by operation of minimum compulsory insurance requirements;

(c) That Prime is entitled to reimbursement of indemnification for the full amount of any payments which Prime has or may make by virtue of an obligation arising from operation of the MCS-90B Endorsement, to include all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing by reason of the Accident;

(d) For damages, interest, attorneys' fees and costs of suit; and

(e) For such other and further relief as the Court deems equitable and just.

**FOURTH CAUSE OF ACTION**

~~50.~~75. Prime repeats and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

~~51.~~76. The Prime Policy creates no obligations for Prime in the event of an Accident involving a Scheduled Auto not operated by a Scheduled Driver.

~~52.~~77. RMT, by and through its agents, sought to add Otuoyo as a Scheduled Driver three days after the Accident with knowledge of the Accident.

~~53.~~78. When RMT and William entered into the Prime Policy, and the PGIA, they had a duty of good faith and fair dealing toward Prime.

~~54.~~79. Additionally, the express terms of the Prime policy and the associated policy receipt contained contractual conditions and requirements to be faithful in submissions to the insurer with knowledge that Prime would rely on the truth and completeness of the insured's representations and indemnification.

~~55.~~80. The attempt to add Otuoyo as a Scheduled Driver after what the insured then understood to have been a fatal accident, doing so on the same day that the accident was first reported to the insurer, and in failing to fully disclose material information as to the nature of the Accident, and in thereafter claiming that the reason for the failure to obtain insured status was an undescribed clerical glitch such that the insurer should provide coverage against that which was not a fortuitous loss, are each breaches of RMT and Williams' duties to deal fairly with Prime.

81. As such, to the extent Prime is determined to have any duty to defend or indemnify RMT, Otuoyo or any other individual or entity in connection with the Accident, Prime is entitled

to monetary damages for any losses it has or will incur by virtue of the addition of Otuoyo as a Scheduled Driver caused by RMT and William's breach of their duty of good faith and fair dealing to Prime.

56.

**WHEREFORE**, Prime demands the entry of declaratory judgment adjudicating its rights and obligations pertaining to the Accident and, on its counterclaims and third-party claims, against Plaintiff RMT and Third-Party Defendant William, adjudging and or/declaring as follows:

(a) RMT and William breached their duty of good faith and fair dealing to Prime;

(b) That Prime is entitled to reimbursement of all defense-related expenses and for full and complete indemnification from any future payment made by Prime arising out of the Accident, whether pursuant to the Prime Policy or by operation of minimum compulsory insurance requirements;

(c) That Prime is entitled to reimbursement of all defense-related expenses and for full and complete indemnification from any payments that Prime would not have been obligated to make under the provisions of the Prime Policy except for the MCS-90B Endorsement, to include all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing by reason of the Accident;

(d) That Prime is entitled to reimbursement of any expenses related to payment of damages incurred by third-parties in claims made arising out of the Accident;

(e) For damages, interest, attorneys' fees and costs of suit; and

(f) For such other and further relief as the Court deems equitable and just.

FIFTH CAUSE OF ACTION

82. Prime repeats and re-alleges each and every allegation set forth above with the same

force and effect as if fully set forth herein.

83. The fact discovery proceedings and deposition testimony in the underlying Malavazi Action have revealed that both RMT and its sister company SMT participated in the operation and/or maintenance of the bus which was involved in the relevant Accident.

84. SMT is not a "Named Insured" on the Prime Policy, nor does SMT otherwise qualify as an insured under the terms and conditions of the Prime Policy.

**WHEREFORE**, Prime demands judgment as follows:

(a) Declaring that SMT does not qualify as an "Insured" under the terms and conditions of the Prime Policy;

(b) Declaring that Prime owes no duty under the Prime Policy to defend or indemnify SMT against any claims arising out of the Accident.

(c) For damages, interest, attorneys' fees and costs of suit; and

(d) For such other and further relief as the Court deems equitable and just.

Formatted: Font: Bold

Formatted: Numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

## SIXTH CAUSE OF ACTION

Formatted: Font: Bold, Underline

Formatted: Centered, No bullets or numbering

85. Prime repeats and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

86. As set forth above, the Northbridge Policy that was issued to SMT by Northbridge was in effect on the date of the Accident.

87. The available factual record for the Accident (including but not limited to the pertinent facts set forth and/or established within the Malavazi Action proceedings) shows that both RMT and SMT participated in the use, operation and/or maintenance of the bus which was involved in the Accident.

88. SMT is not entitled to any coverage under the Prime Policy with regard to the

Accident.

89. By virtue of SMT's involvement in the Accident, RMT and Otuoyo either qualify as "insureds" or as "additional insureds" under the Northbridge Policy and are accordingly entitled to coverage thereunder.

90. By virtue of an MCS-90B form attached to the Northbridge policy, or an analogous form satisfying U.S. DOT requirements, Northbridge has an obligation to satisfy any judgment against its insureds in conformance with the governing statutory requirements.

91. To the extent that RMT and/or Otuoyo qualify as insureds under the Northbridge Policy such that Northbridge is obligated to defend and/or indemnify RMT and/or Otuoyo, the "Other Insurance" conditions of the Prime Policy may operate to further release Prime from any duty to defend against the Accident on the basis that another insurer has a duty to defend.

92. Even if the conditions of Section VII.C.1. of the Prime Policy do not apply, at minimum, the remaining "Other Insurance" conditions of the Prime Policy require Northbridge to contribute a portion of the Northbridge Policy limits to the defense of SMT, RMT, and Otuoyo.

**WHEREFORE**, Prime demands judgment as follows:

(a) Declaring that RMT and Otuoyo qualify as "insureds" or as "additional insureds" under the Northbridge Policy and are accordingly entitled to coverage thereunder.

(b) Declaring that Northbridge has a duty to defend and indemnify SMT, RMT, and Otuoyo with regard to the Accident on a primary and non-contributory basis;

(c) In the alternative to the relief sought in the above paragraphs (a)-(b), to the extent that, despite the numerous bars to coverage set forth herein, the Court nevertheless determines that Prime must contribute to the defense and/or indemnification of RMT and/or Otuoyo, Northbridge shall also be obligated to contribute to the defense and/or

Formatted: Font: Bold

indemnification of RMT and Otuovo as provided for under the terms of the Prime Policy and the Northbridge Policy

(d) For damages, interest, attorneys' fees and costs of suit; and

(e) For such other and further relief as the Court deems equitable and just.

Formatted: Numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

**JURY DEMAND**

Defendant Prime demands trial by a jury as to all issues.

**DESIGNATION OF TRIAL COUNSEL**

Bruce M. Strikowsky, Esq. is hereby designated trial counsel for the defendant Prime in the within matter.

Dated: ~~October~~ November [DATE TBD]~~14~~, 20265
New York, New York

Formatted: Highlight

By: */s/ Bruce M. Strikowsky*
Bruce M. Strikowsky
STRIKOWSKY DRACHMAN & SHAPIRO PLLC
*Counsel for Defendant*
*Prime Property & Casualty Insurance Inc.*